THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD D. KARICH, Defendant-Appellant.

Second District   No. 2—95—1568

Opinion filed December 2, 1997.—Rehearing denied December 29, 1997.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, and Henry H. Sugden III, of Madsen, Sugden & Gottemoller, of Crystal Lake, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Donald D. Karich, was charged by complaint with telephone harassment (720 ILCS 135/1—1(2) (West 1996)) and violating an order of protection (720 ILCS 5/12—30(a)(1) (West 1996)). Following a bench trial, the trial court acquitted defendant of telephone harassment, convicted defendant of violating the order of protection, and sentenced defendant to one year of probation. On appeal, defendant argues that we must reverse his conviction because (1) the statute under which he was convicted creates an unconstitutional evidentiary presumption, and (2) the State did not prove defendant's guilt beyond a reasonable doubt. We reverse.

This appeal arises out of events that occurred on the evening of March 1, 1995. Although the State and defendant disagree as to how those events unfolded, the following background facts are not in dispute: Defendant and his wife, Theresa, were in the process of dissolving their marriage. After their relationship turned particularly unfriendly, Theresa sought and obtained an order of protection that prohibited defendant from, among other things, harassing Theresa. The order did not, however, prohibit defendant from telephoning or

visiting with his children who lived with Theresa. The order was valid and in force on the evening of March 1, 1995.

At this point, the State and defendant offer wholly divergent accounts of the events of March 1, 1995. The State's account, which Theresa testified to, is as follows: On the evening of March 1, 1995, Theresa was home with her children. At approximately 8:30 p.m., the telephone rang. Theresa picked up the receiver and heard defendant swearing at and threatening her. She knew it was defendant because she recognized his voice. Theresa hung up the phone and reported the call to the police, but defendant called back and continued to berate Theresa with threats and vulgar language. Theresa again hung up, and defendant again called back. Theresa now began to "trace" the calls to confirm that defendant was placing them. By 9 p.m., defendant had called Theresa between 6 and 12 times. The calls made Theresa feel disgusted, hurt, angry, and afraid.

Defendant testified that, on the evening of March 1, 1995, he placed several telephone calls to Theresa's residence. His purpose in placing the calls was to speak not with Theresa but with his children. Each time defendant called, however, Theresa answered the telephone and hung up without letting defendant speak with his children. After several attempts, defendant stopped calling and resolved to raise the matter with his attorney the next morning. Later in the evening, defendant received a call from a police officer who advised defendant to stop calling Theresa. Defendant insisted that he never insulted, threatened, or berated Theresa; rather, he merely asked Theresa to let him speak with his children.

After hearing these conflicting accounts, the trial court acquitted defendant of telephone harassment. The telephone harassment statute makes it a crime to place a telephone call, whether or not a conversation ensues, with the intent to abuse, threaten, or harass any person at the called number. 720 ILCS 135/1—1(2) (West 1996). In acquitting defendant, the trial court explained that, given the conflicting accounts of the March 1, 1995, telephone calls, the State had not proved the content of those calls beyond a reasonable doubt. Without knowing the content of those conversations, the trial court could not conclude beyond a reasonable doubt that defendant's placing of those calls was malicious. However, the trial court did convict defendant of violating the order of protection. See 720 ILCS 5/12—30(a)(1) (West 1996).

In convicting defendant, the trial court explained that, unlike the telephone harassment statute, section 103(7)(ii) of the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/103(7)(ii) (West 1996)) did not require the State to prove either the

purpose or the contents of the March 1, 1995, calls. Rather, once the State proved that defendant repeatedly called Theresa's residence, section 103(7)(ii) required the trial court to presume that the calls caused emotional distress. Given defendant's admission that he placed several calls to Theresa's residence, the trial court held that the State had satisfied its burden "regardless of what the content of the conversation was."

The defendant argues that the State failed to establish the first element of the offense beyond a reasonable doubt. The defendant claims that the State failed to prove that the defendant's purpose in making the telephone calls was not reasonable under the circumstances. The State claims that the fact that the defendant continued to call the victim, even after she hung up on him, was sufficient to prove the first element beyond a reasonable doubt. We agree with the defendant.

██ ██ It is well established that a criminal conviction will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *People v. Batchelor*, 171 Ill. 2d 367, 376 (1996). In this case the defendant was found guilty of violating an order of protection, in that he harassed Theresa. The order of protection was issued pursuant to section 214(a) of the Domestic Violence Act (750 ILCS 60/214(a) (West 1996)). In order to prove a violation of an order of protection by harassment the State must prove: (1) "knowing conduct which is *not* necessary to accomplish a purpose that is *reasonable under the circumstances*"; (2) that the conduct "would cause a reasonable person emotional distress"; and (3) that the conduct did "cause emotional distress to the petitioner." (Emphasis added.) 750 ILCS 60/103(7) (West 1996). The section also states:

"Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress:
***
(ii) repeatedly telephoning petitioner's place of employment, home or residence[.]" 750 ILCS 60/103(7)(ii) (West 1996).

██ At trial, the defendant testified that he called Theresa several times on the evening in question to speak with his children. However, each time the defendant called, Theresa hung up the phone without letting him speak with his children. Theresa testified that the defendant called 6 to 12 times and berated her with threats and vulgar language. The trial court concluded that the State had not proved

the content of those calls beyond a reasonable doubt. That the defendant placed 6 to 12 calls to Theresa does not, *ipso facto*, establish beyond a reasonable doubt that the purpose of those calls was not reasonable. Without knowing the content of the calls, we do not believe that any rational trier of fact could have found the defendant's purpose in making the calls was not "reasonable under the circumstances." 750 ILCS 60/103(7) (West 1996). Thus, the State failed to prove the defendant guilty beyond a reasonable doubt. *Batchelor*, 171 Ill. 2d at 376.

Because we have found a basis for reversal based on insufficiency of the evidence, we do not address defendant's second contention that section 103(7)(ii) of the Domestic Violence Act creates an unconstitutional evidentiary presumption.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

Reversed.

INGLIS and RATHJE, JJ., concur.