2016 IL App (4th) 160160

NOS. 4-16-0160, 4-16-0161, 4-16-0162 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| DALLAS B. COOK, | ) | Appeal from |
| Petitioner-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| ILLINOIS STATE BOARD OF ELECTIONS, Sitting As | ) | Nos. 16MR42 |
| the State Officers Electoral Board, and Its Members, | ) | 16MR43 |
| WILLIAM CADIGAN, ANDY CARRUTHERS, BETTY | ) | 16MR44 |
| J. COFFRIN, ERNEST L. GOWEN, JOHN KEITH, | ) | |
| WILLIAM M. McGUFFAGE, CHARLES W. SCHOLZ, | ) | |
| CASANDRA B. WATSON, In Their Official Capacities | ) | |
| As Members of the Illinois State Board of Elections; and | ) | |
| ROBERT B. HAIDA, JOHN BARICEVIC, and ROBERT | ) | |
| LeCHIEN, Candidates for Circuit Court Judge in the 20th | ) | Honorable |
| Judicial Circuit, | ) | Esteban F. Sanchez, |
| Respondents-Appellees. | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Harris and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1    In December 2015, petitioner, Dallas B. Cook, filed with the Illinois State Board of Elections, sitting as the State Officers Electoral Board (Board), objections to the nomination papers of respondents, Robert B. Haida, John Baricevic, and Robert LeChien (hereinafter, "the three judges"), all of whom are candidates for circuit court judge in the 20th Judicial Circuit. After a tie vote, the Board took no action on petitioner's objections. Pursuant to section 10-10.1(a) of the Election Code (10 ILCS 5/10-10.1(a) (West 2014)), petitioner filed petitions for judicial review of the Board's decision. After a February 2016 hearing, the Sangamon County circuit court denied petitioner's petitions and affirmed the Board's decision.

¶ 2 Petitioner appeals, asserting article VI, section 12, of the Illinois Constitution of 1970 (1970 Constitution) (Ill. Const. 1970, art. VI, § 12) does not provide a sitting judge the option of seeking reelection. We affirm the circuit court's judgment and confirm the Board's decision.

¶ 3                                    I. BACKGROUND

¶ 4 The three judges are all current circuit court judges in the Illinois 20th Judicial Circuit. In August 2015, the three judges sent letters to Illinois Supreme Court Chief Justice Rita Garman, announcing their resignation from their current judicial office and stating their intent to seek election to their own judicial office, rather than seek retention. The effective date of their resignations is December 4, 2016, which is the last day of their respective terms. Justice Garman accepted the three judges' resignations and certified the vacancies. On November 23, 2015, the three judges each filed nominating papers, seeking to be a candidate for one of the three circuit judge vacancies in the 20th Judicial Circuit. Judge Haida's papers stated he sought to fill the vacancy created by Judge Baricevic's resignation, and Judge Baricevic sought to fill the vacancy created by Judge Haida's resignation. Judge LeChien sought to fill his own vacancy.

¶ 5 On December 7, 2015, petitioner filed with the Board his objection to the three judges' nominating papers, essentially asserting the three judges were required to seek retention and could not seek reelection. By agreement, the three cases were consolidated before the Board's hearing examiner. The parties submitted briefs in support of their respective positions. On January 4, 2016, the hearing examiner conducted a hearing, at which the parties' attorneys presented arguments. On January 15, 2016, the hearing examiner filed his recommendation. He recommended the Board overrule petitioner's objections. The hearing examiner found that, when given their plain and ordinary meaning and read together, article VI, sections 11, 12(a), and

- 2 -

12(d) of the 1970 Constitution (Ill. Const. 1970, art. VI, § 11, 12(a), 12(d)) give elected judges the option of seeking retention pursuant to section 12(d) or running in an election in accordance with the process set forth in section 12(a). The Board's general counsel concurred with the hearing examiner's recommendation.

¶ 6    On January 20, 2016, the Board held a hearing on the three consolidated cases. After hearing the parties' arguments, the eight-member Board voted on whether to concur with the hearing examiner's recommendation. The vote was a four-to-four tie. Under section 1A-7 of the Election Code (10 ILCS 5/1A-7 (West 2014)), "5 votes are necessary for any action of the Board to become effective." Thus, in each of the three cases, the Board entered a written decision, which stated no action was taken disposing of petitioner's objection.

¶ 7    On January 25, 2016, petitioner filed petitions for judicial review of the Board's decision as to each of the three judges (Haida No. 16-MR-42, Baricevic No. 16-MR-43, LeChien No. 16-MR-44). We note that, while the Board took no action on petitioner's objections, the Board's vote was nonetheless subject to judicial review. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 422-23, 939 N.E.2d 368, 371 (2010) (citing 10 ILCS 5/10-10.1 (West 2008) (which provides an "objector aggrieved by the decision of an electoral board may secure judicial review")). In his petitions for review, petitioner challenged (1) the constitutionality of a previously elected and currently sitting judge seeking to remain in his office by election rather retention and (2) the proxy vote of one of the Board members. Petitioner later withdrew his challenge to the proxy vote. The circuit court consolidated the three judge's cases.

¶ 8    After the parties briefed the issue, the circuit court held a hearing on February 19, 2016. The court heard the parties' arguments and took the matter under advisement. On February 23, 2016, the circuit court entered its written order, denying the petitions for judicial

review and affirming the Board's decision.  The court found section 12(d) was not ambiguous.  It further concluded section 12(d), when read in conjunction with sections 11 and 12(a), gave elected judges "the choice of seeking to remain in office by retention or through other constitutionally approved method, namely, election or appointment."

¶ 9       On February 26, 2016, petitioner filed timely notices of appeal in substantial compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015) (Haida No. 4-16-0160, Baricevic No. 4-16-0161, LeChien No. 4-16-0162).  Accordingly, we have jurisdiction of these appeals under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).  In March 2016, we consolidated the three appeals at petitioner's request.

¶ 10                                II. ANALYSIS

¶ 11      Where judicial review is sought pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2014)), "the proceeding is in the nature of administrative review." *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 19, 28 N.E.3d 170.  Thus, when a circuit court reviews an electoral board's decision, this court reviews the Board's decision, not the circuit court's.  *Solomon v. Scholefield*, 2015 IL App (1st) 150685, ¶ 15, 30 N.E.3d 480.  "[T]he standard of review is determined by the type of question on review." *Hossfeld*, 238 Ill. 2d at 423, 939 N.E.2d at 371.  Here, petitioner asserts his appeal presents a question of law, and respondents contend it sets forth a mixed question of law and fact.  We agree with petitioner his appeal requires us to interpret a section of the Illinois Constitution, which presents purely a question of law.  Accordingly, our standard of review is *de novo*, which has been characterized as "independent and not deferential."  (Internal quotation marks omitted.) *Goodman v. Ward*, 241 Ill. 2d 398, 406, 948 N.E.2d 580, 585 (2011) (quoting *Hossfeld*, 238 Ill. 2d at 423, 939 N.E.2d at 371).

¶ 12                                    A. Mootness

¶ 13          Before we address the merits of petitioner's argument, respondents assert this appeal is moot because petitioner sought to have the three judges' names not included on the ballot for the March 15, 2016, primary election and that election has already occurred. Petitioner contends the issue of whether the three judges have the option of foregoing the retention process in favor of a general election is still very much alive, and it does not matter whether the three judges' names are not included on the primary ballot or the general ballot.

¶ 14          A reviewing court will find a case on appeal moot when " 'the issues raised below no longer exist because events subsequent to the filing of the appeal make it impossible for the reviewing court to grant the complaining party effectual relief.' " *Goodman*, 241 Ill. 2d at 404, 948 N.E.2d at 584 (quoting *Hossfeld*, 238 Ill. 2d at 423-24, 939 N.E.2d at 371). As respondents note, petitioner's petitions specifically requested the three judges' names not be printed on the official ballot for the primary election and made no reference to the general election. However, the general election has not yet occurred, and thus whether a judge can seek election rather than run for retention is still at issue.

¶ 15          In *Hossfeld*, 238 Ill. 2d at 421, 423-24, 939 N.E.2d at 370-71, a voter challenged a candidate's eligibility to run as a Republican candidate, and despite the candidate winning the Republican primary, our supreme court found the appeal from the voter's challenge was not moot because the general election had not yet occurred. Our supreme court further found that, in any event, the appeal raised "an issue of election law which 'inherently is a matter of public concern' and reviewable under the public interest exception to the mootness doctrine." *Hossfeld*, 238 Ill. 2d at 424, 939 N.E.2d at 371 (quoting *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018 (2008)). As in *Hossfeld*, the general election

has yet to take place, and this court can still grant effectual relief on the issue raised by petitioner. Accordingly, we find this appeal is not moot. Moreover, even if it is moot, the appeal would be reviewable under the public interest exception to the mootness doctrine. In making that finding, we disagree with respondents' assertion the question raised in this appeal is not likely to recur.

¶ 16                    B. Article VI, Section 12, of the 1970 Constitution

¶ 17        Petitioner's argument is essentially the language of article VI, section 12, of the 1970 Constitution does not provide a sitting judge with the option of seeking "reelection" instead of retention. Respondents contend the only issue before the Board was whether the three judges' nomination papers were valid. Petitioner does not dispute the candidates' nomination papers met the other statutory and constitutional requirements. He is arguing the nomination papers are unconstitutional because they violate article VI, section 12, of the 1970 Constitution.

¶ 18        In interpreting the 1970 Constitution, this court must ascertain the plain and ordinary meaning of the relevant constitutional provisions in the constitutional contexts in which they appear. *Maddux v. Blagojevich*, 233 Ill. 2d 508, 523, 911 N.E.2d 979, 988 (2009). Further, we must read and understand the constitution provisions according to the most natural and obvious meaning of the language to avoid eliminating or extending its operation. *Maddux*, 233 Ill. 2d at 523, 911 N.E.2d at 988. Similarly, courts should not, under the guise of interpretation, add requirements or impose limitations that are inconsistent with the provision's plain meaning. *Nottage v. Jeka*, 172 Ill. 2d 386, 392, 667 N.E.2d 91, 93 (1996). "Where the words of the constitution are clear, explicit, and unambiguous, there is no need for a court to engage in construction." *Maddux*, 233 Ill. 2d at 523, 911 N.E.2d at 988.

¶ 19        Article VI, section 12, of the 1970 Constitution (Ill. Const. 1970, art. VI, § 12)

states the following:

"(a) Supreme, Appellate and Circuit Judges shall be

nominated at primary elections or by petition.  Judges shall be

elected at general or judicial elections as the General Assembly

shall provide by law.  A person eligible for the office of Judge may

cause his name to appear on the ballot as a candidate for Judge at

the primary and at the general or judicial elections by submitting

petitions.  The General Assembly shall prescribe by law the

requirements for petitions.

(b) The office of a Judge shall be vacant upon his death,

resignation, retirement, removal, or upon the conclusion of his

term without retention in office.  Whenever an additional Appellate

or Circuit Judge is authorized by law, the office shall be filled in

the manner provided for filling a vacancy in that office.

(c) A vacancy occurring in the office of Supreme,

Appellate or Circuit Judge shall be filled as the General Assembly

may provide by law.  In the absence of a law, vacancies may be

filled by appointment by the Supreme Court.  A person appointed

to fill a vacancy 60 or more days prior to the next primary election

to nominate Judges shall serve until the vacancy is filled for a term

at the next general or judicial election.  A person appointed to fill a

vacancy less than 60 days prior to the next primary election to

nominate Judges shall serve until the vacancy is filled at the second general or judicial election following such appointment.

(d) Not less than six months before the general election preceding the expiration of his term of office, a Supreme, Appellate or Circuit Judge who has been elected to that office may file in the office of the Secretary of State a declaration of candidacy to succeed himself. The Secretary of State, not less than 63 days before the election, shall certify the Judge's candidacy to the proper election officials. The names of Judges seeking retention shall be submitted to the electors, separately and without party designation, on the sole question whether each Judge shall be retained in office for another term. The retention elections shall be conducted at general elections in the appropriate Judicial District, for Supreme and Appellate Judges, and in the circuit for Circuit Judges. The affirmative vote of three-fifths of the electors voting on the question shall elect the Judge to the office for a term commencing on the first Monday in December following his election.

(e) A law reducing the number of Appellate or Circuit Judges shall be without prejudice to the right of the Judges affected to seek retention in office. A reduction shall become effective when a vacancy occurs in the affected unit."

¶ 20    In his opening brief, plaintiff asserts the language of section 12(d) is

unambiguous.  However, in his reply brief, plaintiff argues for the first time the section is ambiguous when section 12 is read as a whole based on the differing positions between the parties.  However, language is not ambiguous simply because the parties disagree as to its meaning.  *Kaider v. Hamos*, 2012 IL App (1st) 111109, ¶ 11, 975 N.E.2d 667.  Language is "ambiguous when it can be reasonably interpreted in two different ways." *People v. Shanklin*, 329 Ill. App. 3d 1144, 1145, 769 N.E.2d 547, 548 (2002).  For the reasons that follow, we do not find petitioner's interpretation of section 12 of the 1970 Constitution is reasonable and thus do not find that section is ambiguous.

¶ 21          In his brief, petitioner contends section 12(a) applies to "a person who wants to be nominated, is eligible to be a judge and who is currently <u>not</u> a judge because he/she has *not yet* been elected."  (Emphases in original).  First, section 12(a) does not have any language limiting it to people who have not yet been elected a judge.  Moreover, under plaintiff's interpretation of section 12(a), elected judges would be unable to run for other judicial vacancies because they are a current judge who has been elected.  To the extent plaintiff suggests the language of section 12(a) means not yet elected *to the same seat*, plaintiff is adding even more qualifications to section 12(a) that are not included in the language of that section.  Additionally, petitioner argues he is not adding language to section 12(a), but rather, he is requesting the words "elected to that office" in section 12(d) not be deleted, overlooked, or ignored.  As we will explain in addressing section 12(d), the "elected to that office" language is not overlooked or ignored when section 12(a) is applied without adding additional language. Section 12(a) clearly provides Illinois circuit, appellate, and supreme court judges are to be elected and the only limitation on who can run for a judicial office is the person must be eligible for the office of judge under article VI, section 11, of the 1970 Constitution (Ill. Const. 1970, art. VI, § 11).  Section 11 also does not

place any limitations on an elected judge's ability to run for the same judicial office.

¶ 22    As to section 12(d), petitioner asserts it sets forth the required methodology for judges who have been elected to remain in their judicial office. However, section 12(d) uses the word "may." "May" indicates something is "permissive rather than mandatory." *In re Marriage of Freeman*, 106 Ill. 2d 290, 298, 478 N.E.2d 326, 329 (1985). Further, the "elected to that office" language of section 12(d) differentiates elected judges from those appointed to a judicial office. Section 12(d) only allows elected judges to seek retention, not appointed ones. Thus, we disagree with petitioner the "elected to that office" language makes retention the only means for a sitting judge to remain in his judicial office. Moreover, section 12(d) does not contain language prohibiting those eligible for retention under its provision from seeking to get on the ballot under section 12(a). Thus, while section 12(d) clearly provides elected judges may run for retention to keep their judicial office, section 12(d) does not limit elected judges to the retention procedure. As our supreme court has held, section 12(d) (Ill. Const. 1970, art. VI, § 12(d)) "means exactly what it says: 'Not less than six months before the general election preceding the expiration of his term of office, a Supreme, Appellate or Circuit Judge who has been elected to that office *may* file in the office of the Secretary of State a declaration of candidacy to succeed himself." (Emphasis added.) *O'Brien v. White*, 219 Ill. 2d 86, 99, 846 N.E.2d 116, 123 (2006).

¶ 23    In support of his interpretation, petitioner cites our supreme court's decision in *O'Brien*. He asserts that, in that decision, our supreme court explained how the constitution created two schemes for electing judges, the initial election process and the nonpartisan retention scheme. However, it was the circuit court in that case which outlined the two schemes, and the supreme court only mentioned the schemes in recounting the circuit court's ruling in the background section of its opinion. *O'Brien*, 219 Ill. 2d at 92, 846 N.E.2d at 119. The supreme

court did not mention the two schemes in its analysis. Thus, we disagree with petitioner the supreme court's opinion in *O'Brien* suggests the election process is limited to a judge's initial election to a judicial office.

¶ 24 Petitioner further cites historical notes to the 1970 Constitution and public policy in support of his interpretation of section 12. However, we have found the section is not ambiguous, and thus we do not consider those arguments. See *O'Brien*, 219 Ill. 2d at 99-100, 846 N.E.2d at 124.

¶ 25 Article VI, section 12, of 1970 Constitution sets forth both the election of and retention of Illinois supreme, appellate, and circuit court judges and contains no limitations preventing an elected judge from running for his or her own vacated judicial office instead of retention. While legitimate public policy arguments may exist for limiting elected judges to the retention process only, the 1970 Constitution was not written with such a limitation, and we are bound to uphold the constitution as it is written.

¶ 26                                III. CONCLUSION

¶ 27 For the reasons stated, we affirm the Sangamon County circuit court's judgment and confirm the Board's decision that allowed the three judges to remain on the ballot.

¶ 28 Affirmed.